**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARTIN McWILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 3060 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| MICHELLE McWILLIAMS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Martin McWilliams ("McWilliams" or "Plaintiff") has brought suit against Michelle McWilliams ("Michelle"), Elizabeth Sappenfield ("Sappenfield"), and Dawn Gorman-Kenny in her official and individual capacities ("Gorman-Kenny") (collectively "Defendants")[1] for violations of 15 U.S.C. § 1983 and various state law claims related to Plaintiff's arrest for disorderly conduct. Before this Court are Defendants' motions for summary judgment (Docket Nos. 193,189 & 182 respectively). For the reasons stated below, Defendants' motions for summary judgment are GRANTED.

**FACTS[2]**

Plaintiff and Michelle were married in 1997. Gorman-Kenny Facts ¶ 8. The McWilliams couple has been involved in a contentious divorce. Id. ¶ 11. In 2005, Michelle

---

[1]The Village of Orland Park was originally included as a Defendant but was dismissed by this Court pursuant to Plaintiff's motion to remove on August 30, 2006. Michael Fortuna was also included as a Defendant but was removed from the suit by way of a joint dismissal as of February 28, 2007.

[2]These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are considered undisputed.

-1-

moved out of the home she had shared with her husband in Chicago, Illinois. Id. ¶ 9. As of August 6, 2005, she was living with her friend, Sappenfield. Id. ¶ 10.

Leading up to and including August 6, 2005, Plaintiff made a series of phone calls and left several voice messages for Michelle, some of which involved yelling and swearing. Id. ¶ 12; Sappenfield Facts ¶¶ 11-12. In response to these calls, Michelle's friend Sappenfield contacted Plaintiff and had a series of unrecorded conversations, in which Plaintiff threatened to kill both Michelle and Sappenfield. Id. ¶¶ 15-20. Sappenfield recorded her last telephone conversation with Plaintiff , in which he stated, in part, "I am coming to get you...I want to get you Liz I am going to get you...I am gonna get Liz first." Id. ¶ 22. Sappenfield contacted the Orland Park police, who dispatched Officer Swendsen to Sappenfield's residence. Id. ¶¶ 23-24. Sappenfield also contacted her ex-husband Michael Fortuna, who later came to the residence. *See* id. ¶ 25.

Michelle McWilliams telephoned the Plaintiff, as Sappenfield listened to the majority of the conversation over the speakerphone. Id. ¶¶ 26-27. In that conversation, Plaintiff referenced his prior threats against Sappenfield, id. ¶ 28; made new threats to kill Michelle and Sappenfield, id. ¶ 29; and acknowledged the likelihood that the call was being recorded, id. ¶ 30 ("I know you record this, Michelle, for that Jewish fucking lawyer that you have."). At Plaintiff's deposition, he admitted that the recording of the telephone call was his own voice, and did not dispute its substance. Id. ¶ 31. Plaintiff also cannot remember everything he said or did on the evening of August 6, because he was "drunk from alcohol and high on cocaine." Id. ¶ 33.

Toward the end of the telephone conversation, Officer Swendsen arrived from the Orland Park police. Id. ¶ 36. Swendsen listened to the last few minutes of the phone call over the speakerphone. Id. ¶ 38. At his deposition, the officer stated that he heard Plaintiff threaten to

-2-

kill Michelle and Sappenfield, and also heard Plaintiff indicate to Michelle that he knew he was being recorded. Id. ¶ 39. Michelle then ended the conversation at Swendsen's urging. Id. ¶ 40.

On August 9, 2005, Michelle and Sappenfield went to the Orland Park police station to file a criminal complaint against Plaintiff. Id. ¶ 41. Once there, the two women met with Officer Gorman-Kenny. Id. ¶ 42. Gorman-Kenny prepared a criminal complaint for disorderly conduct that Sappenfield signed, and which cited Plaintiff's repeated over-the-phone threats to kill Sappenfield. Id. ¶¶ 44-46. On August 16, 2005, a Cook County Circuit Court judge issued a warrant for Plaintiff's arrest based on Sappenfield's criminal complaint. Id. ¶ 47. At the hearing for issuance of the warrant, no recording or transcript of the telephone call was presented. Id. ¶ 49. Plaintiff turned himself in to the Orland Park police in December of 2005. Id. ¶ 51. Gorman-Kenny had no contact with Plaintiff on the day he was processed at the police station. Id. ¶ 53.

On June 30, 2006, Plaintiff filed this lawsuit. Id. ¶ 56. In it, Plaintiff made the following claims:

>    Count 1:    False Arrest under 42 U.S.C. § 1983, against
>                Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities
>    Count 2:    False Imprisonment under 42 U.S.C. § 1983, against
>                Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities
>    Count 3:    Illegal Tape Recording under 42 U.S.C. §§ 1983, 1985 & 1986, against
>                Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities
>    Count 4:    Illegal Tape Recording under 42 U.S.C. §§ 1983, 1985 & 1986, against
>                Sappenfield and McWilliams
>    Count 5:    Tape Recording under ILCS 720 5/14-2, against
>                Gorman-Kenny
>    Count 6:    Assault under 42 U.S.C. § 1983, against
>                Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities

> Count 7: Assault under Illinois law, against
> Gorman-Kenny
>
> Count 8: Battery under 42 U.S.C. § 1983 against
> Gorman-Kenny
>
> Count 9: Battery, Excessive force under 42 U.S.C. § 1983 against
> Gorman-Kenny
>
> Count 10: Battery under Illinois law against
> Gorman-Kenny
>
> Count 11: Conspiracy under 42 U.S.C. § 1983, against
> Sappenfield and McWilliams
>
> Count 12: Conspiracy under 42 U.S.C. § 1983, against
> Gorman-Kenny
>
> Count 13: [dismissed]
>
> Count 14: Malicious Abuse of Process under 42 U.S.C. §§ 1983, 1985 & 1986,
> Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities
>
> Count 15: Malicious Prosecution under 42 U.S.C. §§ 1983, 1985 & 1986, against
> Sappenfield, McWilliams, and Gorman-Kenny in her individual capacities
>
> Count 16: Negligence under Illinois law, against
> Gorman-Kenny

All remaining Defendants have filed motions for summary judgment.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTION

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

# ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

In their motions for summary judgment, Defendants generally claim: that the arrest was legitimately based on Plaintiff's threats against Sappenfield; that questions about the recordings' authenticity are irrelevant because there was other evidence sufficient for probable cause; and that there is no evidence of a conspiracy or malicious intent against Plaintiff. As a procedural matter, all Defendants also maintain that Plaintiff's Rule 56 filings in opposition to the motions for summary judgment are lacking in the form and substance required by federal and local rules.

a. <u>General Issues</u>

Plaintiff's Rule 56 filings are entirely deficient. Federal rules require Plaintiff, in his response to summary judgment motions, to point to "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In form, Plaintiff should therefore provide affidavits and a memorandum of law, along with statements of and responses to facts containing:

> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

L.R. 56.1(b)(3). Instead, what was filed amounted to a variety of different documents containing repeated arguments, poorly-matched to Defendants' summary judgment statements, and rarely

including citations to the record. In an apt description of Plaintiff's summary judgment papers, Defendant Gorman-Kenny states:

> In his various filings in response to Gorman-Kenny's Motion for Summary Judgment, Plaintiff blatantly ignores the requirements of Rule 56 of the Federal Rules of Civil Procedure, LR 56.1 and this Court's Standing Order Regarding Motions for Summary Judgment. Plaintiff makes allegations of fact without any attempt to establish their foundation or admissibility. Copies of documents are filed without any verification or certification and without any attempt to establish their authenticity. The specific information relied on in the various documents is not identified. Broad conclusions are stated, instead of specific facts showing any genuine issue for trial. Deposition testimony is alleged and deposition passages are recited without the supporting excerpts being attached. Citations to deposition pages and lines are not provided when deposition testimony is referred to.

Gorman-Kenny's Summ. J. Reply at 2. Examples of the most egregiously unsupported statements include: "Elizabeth is committing perjury by stating that Martin said 'to her' that he would kill her"; and "What is likely is that an actor disguises his voice for Michelle and Elizabeth in an effort to insure that the above captioned matter is dismissed through summary judgment." Pl.'s 56.1(b)(3)(A) Resp. to Gorman-Kenny Summ. J. Mot. ¶¶ 3(G-H). Conclusory statements such as these cannot form the basis for deciding summary judgment. Without adequate citation to the record, Plaintiff's arguments cannot be properly considered. "District courts are not obliged in our adversary system to scour the record looking for factual disputes." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

      This Court is generally reluctant to ignore submissions in their entirety, despite the fact that in this instance it is certainly empowered to do so. *See Cady v. Sheeahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). However, in order to acknowledge Defendant's diligence in following the rules of this Court, and ensure that Plaintiff's flagrant abuse of those rules is not rewarded, this

Court will deem as admitted those abundant facts to which Plaintiff has failed to properly respond. Therefore, only those few issues that Plaintiff's Rule 56 filings directly and adequately address will be considered as if they were contested.

As a general matter Plaintiff has based several of his claims on statutory rights that require allegations of "class-based invidiously discriminatory animus." *Loy v. Clamme*, 804 F.2d 405 (7th Cir. 1986) (upholding dismissal for failure to state a claim under both section 1985 and 1986 where plaintiff did not properly present racial or class-based discrimination). Plaintiff has advanced no evidence that such categorical motivations lay behind Defendants' actions. When describing Defendants' motivations Plaintiff invariably portrays them as personal attacks rather than manifestations of the class-based animosity for which sections 1985 and 1986 are reserved. See Mem. in Opp. to Defs.' Summ. J. Mot. at 14 (describing Defendants' purpose as "further[ing] Michelle's interest in the divorce proceedings."). Plaintiff has admitted in other filings that he has "not raised a gender or sex issue," and asserts that such an approach is unnecessary for establishing liability under these laws. Pl.'s Resp. to Mot. to bar Evid. at 4-5. This is completely unsupported by legal authority, and indeed Plaintiff does not cite any. Therefore summary judgment is GRANTED with respect to all claims based on sections 1985 and 1986, found in Counts 3, 4, 14, and 15.

In regard to more general substantive matters, Plaintiff has obscured his arguments against summary judgment with a convoluted theory of spoliation that is, for the most part, unsupported and irrelevant. As discussed below, probable cause for the arrest was adequately based upon evidence other than the recording, therefore Plaintiff's preoccupation with its alleged

manipulation is misplaced. With respect to the procedural and substantive failings in Plaintiff's filings, this Court will retrieve whatever relevant and supported arguments are to be found.

      b.      <u>Validity of the Arrest and Related Claims (Counts 1, 2, 6, 7, 8, 9, 10, 14 & 15)</u>

Plaintiff advances several different claims that center on the alleged deficiencies in his arrest. Largely, these amount to an argument that the recording was inappropriately made, and therefore the subsequent arrest and all that went with it were illegitimate. Without the justification of well-founded probable cause, Plaintiff argues that Defendants are liable for assault, battery, false arrest, and false imprisonment. Plaintiff also maintains that the above actions, taken in their entirety, amount to "us[ing] a legal process with the ulterior purpose, to wit, for personal benefit and to punish Plaintiff for the contentious divorce issues between he and his estranged wife, Defendant Michelle Williams." Am. Compl. ¶¶ 203; 223. According to this theory, Defendants were motivated to overlook the evidentiary deficiencies because they maliciously sought to attack or punish him. He therefore seeks liability for malicious prosecution and abuse of process.

There are no issues of disputed fact regarding the essential elements of the arrest: Plaintiff threatened Sappenfield's life; Sappenfield and Michelle approached Gorman-Kenny about the arrest; Gorman-Kenny then drafted a criminal complaint based on the women's words, as corroborated by Swendsen's police report and the audio recording; the complaint did not mention the recording, but only referred to repeated threats made over the phone; this complaint was presented to a judge at a hearing that made no use of the recording in question; the judge found that there was sufficient evidence to support an arrest warrant; Plaintiff was arrested. At

the time the criminal report was filed there was sufficient information on which probable cause could be based.

This Court may find as a matter of law that probable cause existed only if "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi*, 37 F.3d at 1246; accord *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). In this case, that condition is met. The crime of disorderly conduct[3] for which Plaintiff was arrested requires only that the defendant exhibit conduct with a tendency "to disturb others and to provoke disruptions of public order upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances." *Gower v. Vercler*, 377 F.3d 661, 670 (7th Cir. 2004) (quotations and citations omitted). Though this is a rather broadly stated law, there can be no doubt that threatening the life of another rises to the level of a prohibited action. *See Gower v. Vercler*, 377 F.3d 661 (7th Cir. 2004) (finding that threats of violence were "exactly the type [of behavior] that the Illinois disorderly conduct statute is designed to address"). The Seventh Circuit has held that "when an officer has 'received his information from some person-normally the putative victim or an eye witness-who it seems reasonable to believe is telling the truth,' he has probable cause." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994) (affirming summary judgment of based on officer's reliance on an eyewitness account).

---

[3]The Illinois statute states, in relevant part, "A person commits disorderly conduct when he knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). It should be noted that this law, as amended by Public Act 90-456 (Pub. Act 90-456, eff. January 1, 1998), was deemed unconstitutional in *People v. Sypien*, 198 Ill.2d 334, 261 Ill.Dec. 294 (2001). However, the clause applicable to the instant case was not impacted by the amendments in question.

Gorman-Kenny had sufficient information to believe that Plaintiff had committed the criminal act in question based on her meeting with Sappenfield. That the account of Plaintiff's threatening behavior was corroborated by a police report only bolsters an already strong basis for probable cause. The additional corroboration provided by the recording, though compelling, was not necessary to establish reasonable grounds for pursuing the charge. This conclusion is supported by the fact that neither the recording, nor its transcript, were presented to the judge who ultimately found an adequate basis for issuing the arrest warrant.

In various ways, Plaintiff has attempted to challenge the credibility of the recording according to unconvincing arguments regarding "errors" and largely irrelevant statements about their total length. However, he has done nothing to counter their substance, which is to say that they presented clear evidence that Plaintiff was in fact threatening Sappenfield. Even if the recordings were inadmissible at trial, there was adequate evidence on which probable cause could have been based; Defendant cannot, and indeed does not, contest that this was the case.

Because probable cause existed – regardless of the credibility to be attached to the recording – there is sufficient evidence to grant summary judgment on all false arrest claims in favor of the Defendants. *See Shkrobut v. City of Chicago*, 2005 WL 2787277, at *2 (N.D. Ill. Oct. 24, 2005) ("The Seventh Circuit has held that the existence of probable cause for arrest is an absolute bar to a § 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.") (citing *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990); *Mark v. Furay*, 769 F.2d 1266, 1268-69 (7th Cir. 1985); *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980)). Therefore, summary judgment is GRANTED with respect to all Defendants on counts 1, 2, and 15.

In addition, under both Federal and Illinois law, police officers are permitted to use the amount of force necessary to effectuate an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001) (citing 745 ILCS 10/2-202 for the proposition that "A public employee is immune from liability while enforcing the law unless their acts are willful and wanton."); *see also Bruce v. Perry*, Slip Copy, 2006 WL 1777760, at *7 (S.D. Ill. 2006) (applying the "reasonable" standard to officer's use of force). Plaintiff has presented no evidence to show that the force or threat of force involved when he presented himself at the police station was anything more than that which was necessary to place him in custody. Even the most peaceful arrests necessarily incorporates assault and battery, as physical contact is a part of the process. *Graham*, 490 U.S. at 396 ("[An arrest] necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Therefore, because the arrest was properly based on probable cause, summary judgment is GRANTED with respect to all claims of assault and battery listed in Counts 6, 7, 8, and 10.

Plaintiff moves a step further and claims that there was use of excessive force in the arrest, and indeed, probable cause is not a sufficient defense against such a claim. *Sims v. Jose*, Slip Copy, 2007 WL 951945, at *2 (N.D. Ill. 2007). However, Plaintiff has presented no evidence that the police actions in this case amounted to anything more than what was necessary to effectuate an arrest. Therefore, summary judgment is also GRANTED with respect to the excessive force claim of Count 9. That none of the Defendants was involved in the physical detention of the Plaintiff only confirms that dismissal of these counts is entirely appropriate.

In addition to the failure to find a proper foundation for the arrest, Plaintiff also alleges that Gorman-Kenny and the other Defendants were guided by malicious intentions. However,

the remaining abuse of process claim that relies on this theory is similarly unsupported by the record. Plaintiff's strongest complaint on this subject is his claim that "A reasonable police officer verses [sic] a negligent police officer would have realized by listening to the recording that the [Plaintiff in the instant action] was so impaired that he was not in any position to consent to being recorded." Pl.'s Opp. to Summ. J. at 10. The malicious motive that underlies Defendants' "sinister actions" is itself only the vaguely alluded-to "further Michelle's interest in the divorce proceedings." Pl.'s Mem. in Opp. to Summ. J. at 14. However, Plaintiff has quite simply advanced no information to prove that such an ulterior motive existed or was acted upon.

Abuse of process requires some ulterior motive or improper purpose. *In re Hendrix*, 986 F.2d 195, 201 (7th Cir. 1993). Plaintiff maintains that the criminal complaint was only intended to harass Plaintiff or assist Michelle in her divorce from him. *See* Am. Compl. ¶ 197 (describing the ulterior purpose as "tak[ing] revenge on Plaintiff in a contentious divorce proceeding"). However, he provides no evidence to support this claim. Mere conclusory statements cannot create a question of fact. Therefore, summary judgment is GRANTED with respect to Count 14.

Even if the arrest were dependent on the validity and adequacy of the recording, the arrest would be found valid because, as discussed below, Plaintiff has not established that the recording was wrongly made, that its contents were falsified, or that arresting agents had reason to believe that either or these allegations were true at the time.

    c.    <u>Tape Recording (Counts 3, 4, 5 & 16)</u>

That there was an adequate basis for the arrest without resort to the recording has been settled. Plaintiff nonetheless brings several claims regarding the tape recording that arguably

provide independent grounds for liability. However, there is little basis for these claims, which are contained in Counts 3, 4, and 5 of the Amended Complaint.

Count 3 is based on Plaintiff's constitutional rights as protected by section 1983. However, section 1983 requires that the constitutional deprivation occur under color of law, and there is no evidence that the police were in any way involved in preparing or executing the tape recording. Plaintiff also claims in counts 4 and 5 that "Illinois law 720 5/14-2 requires that both parties consent to the recording of a telephone call." However, reading further into the statute cited by Plaintiff reveals that parties with reason to suspect a crime is taking place are permitted to memorialize their conversation without consent from the other party. *See* 720 ILCS 5/14-3(I) (exempting from the law against eavesdropping those recordings made "under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense").

In this instance, Plaintiff's repeated threats and aggression are undeniable, and the two women who took action against Plaintiff were reasonable in taking the steps that they did to record his calls. Plaintiff attempts to portray himself as the victim, by alleging that it was Defendants who "repeatedly and harassingly telephoned Plaintiff five times." Pl.'s Mem. in Opp. to Summ. J. at 3. But whoever did the calling, the substance of those calls is undeniable, in that Plaintiff made threats against the lives of Michelle and Sappenfield. There is therefore no reason to consider any further Defendant's liability for recording the conversation. Summary judgment is therefore GRANTED with respect to counts 3, 4, and 5.

Plaintiff also alleges that the recording was manipulated. As discussed above, the arrest was appropriate based on factors other than the recording, and the act of recording was

legitimately done, so little importance should be placed on the alleged falsification as an independent claim. In any event, Plaintiff's challenges regarding the recordings' authenticity are not compelling.

Plaintiff's proof of spoliation revolves around three allegations: (1) through affidavits and depositions, Defendants have been unable to provide a consistent line of custody for the digital recording device; (2) the police procedures surrounding that custody did not meet standard evidentiary practices; (3) the physical recordings, produced in the form of two tapes and two CDs, were inconsistent, as further evidenced by differences between the transcripts that were produced. *See* Pl.'s Opp. to Summ J. at 8; *see also* Resp. to Def. McWilliams & Sappenfield Facts at 3 (listing the specific discrepancies). It appears there may have been some distinctions between the different recordings and transcripts provided by Defendants. *See* Apostolos Aff. ("After comparing my transcription with Mr. Wall's transcription, I saw inconsistencies on Mr. Wall's transcription pretty much on every page. Some were little things, some were very important things."); Second Apostolos Aff. However, ultimately these arguments are not compelling.

Defendants need not provide a pristine chain of custody for something that is not ultimately admitted as evidence. In terms of the substance of the recordings, Plaintiff does not answer Defendants' reasonable response that some of the tapes simply include additional answering machine messages that the others do not. His position is further undermined by his own deposition, in which he admitted that the voice on the recording was his and acknowledged essentially every threatening statement as his own. *See, e.g.,* Martin McWilliams Dep. at 53 ("All's I can say, Mike, if it's on the tape, yes, I did say it."). He has no basis for contradicting

the corroborated statements of the recording, due to his own substance abuse. Indeed, when asked to point to differences between the different recordings, he at best said "I don't know." That there were some discrepancies is supported by the transcriptionist Apostolos, but even she made no effort to identify the differences in any concrete manner. Without more specific information, this does not support the dramatic discrepancies Plaintiff needs to negate the clearly threatening nature of the recordings. To this day, Plaintiff has done almost nothing to show how the actual substance of the recordings varied from one recording or transcript to another.

Plaintiff has therefore provided no evidence on which a reasonable jury could find that there was tampering of the recorded August 6 telephone conversation that might have any impact on the ultimate disposition of any of the matters relevant to this case. For this reason, the claim alleging that Gorman-Kenny was negligent in not pro-actively questioning the legitimacy of the recording has no basis. Summary judgment is therefore GRANTED with respect to count 16.

      d.     <u>Conspiracy (Counts 11 & 12)</u>

Section 1983 requires a plaintiff to demonstrate that he was deprived of a right secured by the Constitution or Federal law at the hand of someone acting under color of law. *Fries v. Helper*, 146 F.3d 452, 457 (7th Cir. 1998). This occurs where there is a concerted effort between the individual and a state actor. To establish a distinct claim of conspiracy under section 1983, a plaintiff must establish that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, ... and (2) those individual(2) were willful participants in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

Here, Plaintiff has put forth no evidence on which a reasonable jury could find that there was concerted action between the Defendants. Plaintiff has advanced only conjecture to support his claim that Gorman-Kenny conspired with Sappenfield and Michelle. He states in confusingly vague terms that the officer "altered the evidence to justify a warrant," because she was allegedly motivated to assist Michelle in her divorce case. It is uncontested that Gorman-Kenny was not involved with the two other women before they arrived to file a complaint against Plaintiff, and there is no evidence to support finding that there was a meeting of the minds after that point.

Plaintiff fares no better in trying to establish a conspiracy between Michelle and Sappenfield. While the meeting of the minds is far clearer, in that the two worked together to create the recording, there is nonetheless no proof that they had any other motive than to protect themselves from Plaintiff's clear threats. Instead, Plaintiff offers only conclusory statements regarding their motivations. This is entirely insufficient for creating a question of material fact. Summary judgment is therefore GRANTED with respect to counts 11 and 12.

## CONCLUSION

For the foregoing reasons, Defendants' motions for Summary Judgment are GRANTED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **April 16, 2007**